UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN BASURTO, JR.,<br><br>Defendant. | Case No. 10-CR-0304(2) (PJS/AJB)<br><br><br>ORDER ON<br>SENTENCING ENHANCEMENT |

Thomas M. Hollenhorst, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Frederick J. Goetz, GOETZ & ECKLAND P.A., for defendant.

Defendant Martin Basurto, Jr. pleaded guilty to conspiring to distribute methamphetamine.  The Presentence Investigation Report ("PSR") found that Basurto had possessed a firearm in connection with his drug dealing and therefore increased Basurto's offense level pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines.  Basurto objected, and the Court held an evidentiary hearing on January 17, 2012.  For the reasons that follow, the Court finds that it is "clearly improbable" that any of the firearms possessed by Basurto were connected to his drug offense, and therefore the Court sustains Basurto's objection to the sentencing enhancement.

I. BACKGROUND

On October 21, 2010, after an 11-month investigation, federal agents arrested Basurto and other members of his drug-distribution organization, including Basurto's father (Martin Basurto-Esquivel), his cousin (Keener Basurto), and his friend (Patricio Cardoso-Sanchez).  On the same day, agents executed search warrants at Basurto's apartment in West Saint Paul and at a

stand-alone garage in White Bear Lake that was owned by Basurto or by a member of his family.

During the search of Basurto's apartment, agents found 171.5 grams of actual methamphetamine and a digital scale. The agents did not, however, find any firearms or ammunition.

During the search of Basurto's garage, agents found a lot of junk and three firearms — a Beretta .40-caliber handgun, a Sig Sauer .40-caliber handgun, and a Springfield Armory 9-millimeter handgun. The Springfield was found inside a plastic gun case along with five ammunition clips, while the Beretta and Sig Sauer were found inside an old cardboard box along with some ammunition. None of the firearms was loaded. The agents also found two *American Rifleman* magazines nearby; the labels on those magazines showed that they had been mailed to Basurto. Agents also found a heat sealer, which can be used to package drugs. The agents did not find any drugs during their search of the garage. Some time later, agents learned that the Beretta had been stolen in 2004.

## II.  ANALYSIS

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level sentencing enhancement if the defendant possessed a firearm or other dangerous weapon in connection with a drug offense. Application Note 3 states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3. For this sentencing enhancement to apply, then, the government must prove two things. First, the government must prove by a preponderance of the evidence that the defendant possessed a firearm. Second, the government must prove that it is "not clearly

improbable" that the firearm was connected to the drug offense.  *See United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010).

Basurto concedes that the government has established by a preponderance of the evidence that he had constructive possession of the firearms, although Basurto insists that his sister, and not Basurto himself, owned the garage in which the firearms were found.  *See United States v. Muniz Ochoa*, 643 F.3d 1153, 1157 (8th Cir. 2011) (noting that, for this sentencing enhancement, possession of a firearm may be either actual or constructive, and further observing that constructive possession may be established "'by proof that the defendant had control over the place where the firearm was located'") (quoting *United States v. Cox*, 627 F.3d 1083, 1085 (8th Cir. 2010)).  Therefore, the only question is whether the government has established that it is "not clearly improbable" that at least one of the firearms was connected to the drug offense.

While the burden of proof is "always on the government" to establish the applicability of a sentencing enhancement, *see United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008), the Eighth Circuit has emphasized that, when it comes to linking a possessed firearm to a drug offense, the government's burden is very low.  *See Anderson*, 618 F.3d at 882 (noting that this enhancement "creates a very low bar for the government to hurdle"); *see also Peroceski*, 520 F.3d at 888 ("Reducing the proof required on the question of connection . . . supports the goals of the enhancement [by] discourag[ing] drug criminals from bringing weapons anywhere near their drugs.").  As a general matter, the government may meet its burden "by establishing a temporal and spatial relation between the weapon, the defendant, and the drugs," *United States v. Moore*, 184 F.3d 790, 794 (8th Cir. 1999), or by establishing that the firearm "was found in the same location as drugs or drug paraphernalia," *United States v. Fladten*, 230 F.3d 1083, 1086

(8th Cir. 2000).  But the Eighth Circuit has repeatedly cautioned that "the mere presence of a firearm is an insufficient predicate for [the] enhancement."  *United States v. Savage*, 414 F.3d 964, 966 (8th Cir. 2005); *see also United States v. Shields*, 44 F.3d 673, 674-75 (8th Cir. 1995) (reversing the enhancement where there was no evidence of any nexus between the firearms and the drug crimes).

As an initial matter, it is undisputed that there was a *temporal* connection between Basurto's constructive possession of the firearms and his drug dealing.  The firearms were seized on October 21, 2010, the same day that Basurto was arrested.  Also on that day, agents recovered 171.5 grams of methamphetamine while searching Basurto's apartment.  There is no question, then, that Basurto possessed the firearms during the period of time in which he was selling drugs.

The more difficult question is whether there is any *spatial* connection between the firearms and Basurto's drug-dealing activities.  On the one hand, agents found methamphetamine and a digital scale at Basurto's apartment in West Saint Paul, but they did not find any firearms or ammunition.  On the other hand, agents found three firearms at Basurto's garage in White Bear Lake, but they did not find any drugs or drug paraphernalia.[1]  With one exception (which is discussed below), over the course of an investigation that lasted almost a year — an investigation that included extensive visual surveillance, countless hours of wiretaps, nine controlled drug purchases, and at least one face-to-face meeting between Basurto and an undercover officer —

---

[1]The Court gives little weight to the fact that agents found a heat sealer in the garage. Special Agent Terrence Olstad acknowledged that there is no evidence that any of the drugs sold by the Basurto organization were ever stored, transported, or sold in heat-sealed bags.  The defendant's sister, Yesenia Basurto, testified that the heat sealer was used to wrap and seal compact discs that were sold when the family owned a music shop.  There is no evidence that the heat sealer that was found in the junk-filled garage was used to package drugs.

there was never so much as a hint that Basurto or anyone else in the Basurto organization ever possessed a firearm in connection with a drug transaction. Agents never saw anything that resembled a firearm — not even a suspicious bulge in a pocket or waistband — when they monitored Basurto's involvement in drug transactions. Nor did agents ever hear any mention of firearms during the numerous hours of monitored phone conversations involving Basurto and his codefendants. The undercover officer who had a face-to-face meeting with Basurto also failed to report any suspicion that Basurto may have been armed. With a single exception, there is no evidence whatsoever connecting the guns that Basurto possessed with his distribution of methamphetamine.

The one exception involves something that was witnessed by a confidential informant during a controlled drug purchase on November 19, 2009, in front of a Menards store in West Saint Paul. Special Agent Terrence Olstad testified that the informant reported that, while he was buying drugs from Keener Basurto and the defendant was watching the transaction from several car lengths away, the informant thought that he saw a "bulge" near the defendant's waistband — a bulge that the informant believed to have been a firearm. Olstad further testified that, around that time, Keener Basurto mentioned to the informant in passing that one of the Basurto organization's drug sources in California had been murdered.

The Court gives this evidence little weight for several reasons:

First, the confidential informant did not see a firearm or even get close to Basurto. From a distance away, the informant merely saw a bulge near Basurto's waistband. That bulge could have been anything from a cell phone (Basurto was known to carry up to three phones to a drug

deal) to a tape measure (Basurto purchased a Christmas tree at Menards immediately prior to the drug sale).

Second, the informant's report is uncorroborated. Even though a number of agents observed the drug transaction using binoculars and other surveillance equipment — and even though agents monitoring a controlled purchase look for any sign that any of the participants is armed — not one agent reported seeing a bulge or any other indication that Basurto was carrying a weapon.

Third, *after* the informant reported the suspicious bulge in Basurto's waistband on November 19, the agents conducting surveillance were presumably particularly careful to look for evidence of the presence of firearms, so as to protect the lives of the informant and the undercover officer. Yet over the next 10 months of the investigation — which included another seven controlled purchases, as well as additional monitored meetings between Basurto and the informant — neither the agents nor the informant ever reported seeing any evidence that Basurto was carrying a firearm. If Basurto were using firearms in connection with his drug activities, it is difficult to believe that evidence of that fact would be spotted only once — at a drug deal in the middle of the day in a Menards parking lot.

Without any other evidence, the government asks the Court to infer that, because the Beretta was a *stolen* firearm, it is likely that the firearm was acquired for an illegal purpose. That is indeed a possible inference, but the inference is weak in this case. As the Court noted at the evidentiary hearing, Basurto was in the country illegally and therefore he could not purchase a firearm through legal channels. If he wanted to buy a firearm, he had to buy it on the black market, and if he bought it on the black market, there was a good chance that it would be stolen.

It is not surprising that Basurto would purchase guns, as he subscribed to *American Rifleman* — the official journal of the National Rifle Association ("NRA") — and thus was likely a gun enthusiast.  In short, the fact that Basurto possessed a stolen handgun is not nearly as suspicious as it would be if he were an American citizen who did not subscribe to *American Rifleman*.

In sum, then, the government has almost no evidence connecting the firearms found in the garage with Basurto's drug dealing.  The Court acknowledges again that the government needs very little evidence connecting the guns and the drugs — but, in the Court's view, the government has failed to leap this low hurdle.

The Eighth Circuit's recent decision in *United States v. Anderson* is instructive.  618 F.3d 873 (8th Cir. 2010).  In that case, the defendant (Anderson) was convicted of possessing crack cocaine with intent to distribute.  Police officers found a 9-millimeter handgun, two loaded ammunition clips, and a box of ammunition inside a locked safe that was kept in a storage unit rented under the name of Anderson's girlfriend.  *Id.* at 877.  At sentencing, the district court applied the firearm enhancement, finding that Anderson had constructive possession of the gun and that, although the gun was not found in the same location as drugs or drug paraphernalia, it was probable that the firearm was nevertheless connected to Anderson's drug activity.  *Id.* at 878.

The Eighth Circuit affirmed.  After concluding that Anderson constructively possessed the firearm, the Eighth Circuit addressed the nexus between the firearm and the drug offense.  Acknowledging that the question was "close," the Eighth Circuit affirmed the district court's finding of a nexus.  *Id.* at 880.  The Eighth Circuit observed that Anderson had "displayed a *modus operandi* for hiding assets either used in his drug trafficking operation or to assist in his

operation." *Id.* at 881 (noting that Anderson maintained a cell-phone account in his girlfriend's name and that he parked two cars in different locations to enable quick flight). The Eighth Circuit further observed that Anderson provided no credible explanation for possessing the firearm. *Id.* at 881-82. Given Anderson's pattern of hiding the tools of his drug trade in different locations, and given the absence of a legitimate explanation for the firearm, the Eighth Circuit held that it was not clearly improbable that the firearm was connected to the drug offense.

In this Court's view, *Anderson* demarcates the minimum amount of evidence that suffices to establish a nexus between a firearm and a drug offense for purposes of § 2D1.1(b)(1). The majority acknowledged that the facts in *Anderson* presented "a close case" and, in a concurring opinion, Judge Kornmann observed that he "would not have made the same finding" as the district court. *Anderson*, 618 F.3d at 885 (Kornmann, J., concurring).

Here, the government's evidence of a connection between the firearms and the drug offense is weaker than the evidence that presented a "close case" in *Anderson*. In this case, the government has presented no evidence that Basurto had a pattern of hiding his drugs or the tools of his drug operation in different locations under the names of innocent parties. To the contrary, it appears that Basurto kept his drugs and his drug-dealing equipment in his own apartment. Moreover, in this case there is evidence of an alternative reason for possessing the firearms: Copies of *American Rifleman* in Basurto's name were found near the firearms, suggesting that he is a gun enthusiast (and perhaps even a member of the NRA).

One more thing distinguishes this case from *Anderson*. Neither Anderson nor Basurto was ever spotted carrying a firearm. But Anderson was arrested after a brief and relatively

unsophisticated investigation — an investigation that lasted about two months and that involved no wiretaps or controlled purchases.  Here, however, Basurto was the subject of an intensive 11-month investigation involving numerous wiretapped conversations and controlled purchases.  And yet (save for the one uncorroborated report from the informant) no one ever spotted evidence of a gun near a drug transaction.  Thus, the lack of direct evidence of the presence of a gun is more probative in this case than in *Anderson*.

For these reasons, the Court concludes that it is clearly improbable that any of the seized firearms were connected to the drug offense.  Accordingly, the Court sustains Basurto's objection to the application of the two-level enhancement under § 2D1.1(b)(1).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant Martin Basurto Jr.'s objection to the application of the two-level firearm enhancement under § 2D1.1(b)(1) of the United States Sentencing Guidelines is SUSTAINED.

2. The Court directs the United States Probation Office to amend Basurto's PSR to reflect the Court's ruling.

Dated: February 3, 2012
   s/Patrick J. Schiltz
   Patrick J. Schiltz
   United States District Judge